## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ROMELIA G. BENAVIDEZ,**

       Plaintiff,

vs.                                                  Civ. No. 07-528 ACT

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

       Defendant.

## MEMORANDUM OPINION AND ORDER

   **THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed November 2, 2007.  Docket No. 18.  The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well-taken and will be granted.

## I.  PROCEDURAL RECORD

   Plaintiff, Romelia G. Benavidez, filed applications for Supplemental Social Security Income and Disability Insurance Benefits on April 21, 2004.  Tr. 72, 312.   She is alleging a disability since April 1, 2003, after she was involved in an automobile accident which occurred on January 10, 2003.  Tr. 72, 208, 312, 322.  Her application was denied at the initial and reconsideration level.

The ALJ conducted a hearing on July 31, 2006.  Tr. 318.  At the hearing, Plaintiff was represented by counsel.  On January 24, 2007, the ALJ issued an unfavorable decision finding that Plaintiff retained the residual functional capacity ("RFC") to perform work that existed in significant numbers in the economy.  Tr. 26.

The Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ.  Tr. 9-11.  The Plaintiff subsequently filed her Complaint for judicial review of the ALJ's decision on May 29, 2006.

Plaintiff was born on May 28, 1956.  Tr. 72.  She has a high school equivalent degree and past work experience as a babysitter, elder care worker, and processing clerk.  Tr. 26, 326.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards.  *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)).  A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993).  The regulations of the

Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

### III.  MEDICAL HISTORY

On January 10, 2003, Plaintiff was in an automobile accident. She was transported by ambulance to Memorial Medical Center in Las Cruces, New Mexico. She complained of back pain. Tr. 208. On January 20, 2003, her back pain continued and she had right knee pain. Tr. 206.

An MRI of Plaintiff's cervical spine was taken on February 26, 2003. It was normal. Tr. 151. On May 13, 2003, an MRI of Plaintiff's lumbar spine showed:

> "Annular disc bulging with facet hypertrophic degeneration mild to moderately narrows the central canal at L4-L5 with mild to moderate inferior foraminal narrowing.
> Broad based right lateral disc bulging moderately narrows the right neural foramen and lateral recess at L5-S1."

From February 11, 2003, to March 10,2003, Plaintiff was treated by a physical therapist. At her last visit, Plaintiff reported she was feeling better but was still in pain.

3

From January 27, 2003, to July 3, 2003, Plaintiff was treated by Brian Hesser, a chiropractor. On her last visit on July 3, 2003, Dr. Hesser stated that there was "significant improvement in the degree of her low back pain and tha(sic) ther(sic) pain has not been a problem and feels resolved. The patient evaluates her response as having shown an improvement of her low back pain at 95% since her flare-up in April." Tr. 202-03. In his assessment he wrote: "It was discussed with the patient that it is likely that she will have periods were(sic) she is relatively free from pain interspersed with with(sic) acute episodes, exacerbations, and recurrences." Tr. 203.

During this time, on June 4, 2003, Plaintiff was evaluated by Brain P. Delahoussaye, M.D., Medical Director for Rehabilitation and Occupational Medicine. Tr. 124-27. She was referred for her radiating pain in her leg. Tr. 124. He found that Plaintiff had "low back pain with radiation to the right lower extremity" and "right lower extremity sciatica." Tr. 127.

On July 12, 2004, Plaintiff underwent a consultative examination with Carlos Pastrana, M.D. Tr. 128-30. Dr. Pastrana reported that Plaintiff told him the following:

> She states she can stand for 20-30 minutes at a time in a total of 3 hours in an 8-hour period. She can sit for 30-45 minutes at a time in(sic) a total of 3 hours in an 8 -hour period. She states she can walk on level ground for 2 blocks and lift 25 pounds. She can drive a car for 20 miles. She states she can do household chores like vacuuming, cooking, and washing dishes.

Tr. 128.

Dr. Pastrana stated in his report that his impression was:

1. History and exam consistent with degenerative disk disease with chronic neck and low back pain with symptoms of radiculopathy and decreased range of motion.
2. Grossly decreased hearing in the right ear.
3. Obesity with a body mass index of 32.

Tr. 130.

A Physical Residual Functional Capacity Assessment was written in August of 2004.  Tr. 238-45. Her exertional limitations were occasionally lifting 20 pounds; frequently lifting 10 pounds; standing and/or walking about 6 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday.  Tr. 239.

On May 9, 2005, another MRI was done on Plaintiff's lumbar spine because of her continued lower back pain.  Tr. 289.  It showed:

> 1.  At L4-L5, there is a bilobed disc protrusion with underlying disc disease which is asymmetric with the most substantial protrusion leftward.
> 2.  At L5-S1, there is a rightward intraforaminal disc protrusion effacing the existing nerve root.
> 3.  There is mild facet arthropathy at L4-L5.

Tr. 289.

Plaintiff underwent a psychological consultative examination on July 14, 2004, with James W. Schutte, Ph.D.  Tr. 214-217.  He diagnosed Plaintiff with a depressive disorder and found that her current Global Assessment of Functioning ("GAF") was 60.  In his summary, Dr. Schutte wrote:

> The claimant's ability to understand and remember basic instructions does not seem impaired.  Her ability to concentrate and persist at tasks of basic work seems moderately impaired due to depression.  Her ability to interact with the general public and/or co-workers seems mildly impaired due to depression.  Her ability to adapt to changes in the workplace seems mildly impaired due to depression.

Tr. 216.

In April of 2003, a Mental Residual Functional Capacity Assessment was completed.  It was found that Plaintiff was not significantly limited in all but two mental activities.  The report states that Plaintiff was moderately limited in the "ability to maintain attention and concentration for

extended periods" and the "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." Tr. 218-19.

In July of 2004, a Psychiatric Review Technique Form was completed. Tr. 224-237. The report stated that Plaintiff has an affective disorder, depression. Tr. 227. The report also states that Plaintiff has mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and has never had repeated episodes of decompensation. Tr. 234.

Plaintiff attended counseling sessions at Southwest Counseling from February 4, 2005, to May 5, 2005. Tr. 258-288. She was treated for depression. Her primary care physician, Sheila Sacks, M.D., at the La Clinica De Familia, Inc., prescribed Zoloft. Tr. 246, 248.

## IV. DISCUSSION

Based upon the testimony of the vocational expert, the ALJ found that Plaintiff had no transferable skills and found that Plaintiff was not disabled because she could perform jobs that required transferable skills. The ALJ relied on the VE testimony to conclude that "claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 26-7. Moreover, the ALJ found:

> "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)."

Tr. 26.

Plaintiff asserts that the ALJ erred in failing to ask the VE to explain this discrepancy or asked the VE to identify Plaintiff's transferable skills.

The Vocational Expert ("VE") testified that Plaintiff did not have any transferable job skills.[1] Tr. 348. The VE identified three jobs Plaintiff could perform, hostess, clerical sorters and information and referral aide. Tr. 342-43. Each has a SVP, or Specific Vocational Preparation, level of 3, which equates to semiskilled work. Social Security Ruling 00-4p, 2000 WL 1898704 (S.S.A.) ("Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT [Dictionary of Occupational Titles]."). Semiskilled jobs require some skills. 20 C.F.R. § 404.1568(b) ("Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."); SSR 83-10, 1093 WL 31251, at 3* (1983) ("[residual functional capacity] alone never establishes the capability for ...semiskilled work. Ability to perform...semiskilled work depends upon the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level."). Thus, Plaintiff's ability to perform these three jobs depends on whether she had acquired skills.

There is no evidence that Plaintiff had any transferable skills to perform these jobs. The VE testified that Plaintiff's past relevant work were jobs that were unskilled or at most barely into the semi-skilled area and had an SVP of 3. Tr. 341, 347-48. This testimony fails "to meet the first test of transferability; that is, it fails to demonstrate that the alternative work activities required the same or lesser skill level." *Dollar v. Bowen*, 821 F.2d 530, 536 (10th Cir. 1987). Thus, to then conclude that Plaintiff can perform semi-skilled jobs is error. SSR 00-4p, 2000 WL 1898704 *3 ("Evidence from a VE....cannot be inconsistent with the SSA policy on transferability of skills. For example, an individual does not gain skills that could potentially transfer to other work by performing

---

[1]"Skills refer to experience and demonstrated proficiency with work activities in particular tasks or jobs."  SSR 82-41, 1982 WL 31389 *3.

unskilled work. Likewise, an individual cannot transfer skilled to unskilled work or to work involving a greater level of skill than the work from which the individual acquired those skills.") The VE did not testify what specific skills Plaintiff may have acquired in her past work, nor did he discuss how those skills were transferable to the jobs he was listing that Plaintiff could perform. *Ware v. Barnhart*, 123 Fed. Appx. 335, 337 (10th Cir. 2005).   Thus, the ALJ erred in relying on this testimony in finding that Plaintiff was not disabled.   The finding that Plaintiff could perform the semi-skilled jobs of  hostess, clerical sorter, and information and referral aide is not supported by substantial evidence.

Because the VE's testimony was the only step-five evidence that Plaintiff could do other work, the Commissioner failed to carry his step-five burden.

A remand is required and thus the Court need not address Plaintiff's other arguments. However, the Court will comment on the ALJ's analysis at step two of Plaintiff's hearing loss.   The ALJ found that Plaintiff did not have a severe hearing loss at step two.   Tr. 20.   A determination at step two is based on medical evidence alone.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1998) What is of concern to the Court is that the ALJ did not discuss the medical evidence concerning Plaintiff's hearing loss.   Tr. 20.   Rather the ALJ appeared to rely heavily on the fact that Plaintiff had not had her hearing checked in five years.   Tr. 200.   The ALJ quotes extensively from Dr. Pastrana's report of his consultative examination.   However, the ALJ did not mention the fact that Dr. Pastrana found that Plaintiff had "[g]rossly decreased hearing in the right ear."  Tr. 130.   On remand, this evidence should be considered and the ALJ should consider whether to order an evaluation of Plaintiff's hearing loss by a consultative physician.  *Hawkins v. Chater*, 113 F.3d 1162 (10th Cir. 1997).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand

Administrative Decision is granted for proceedings consistent with this memorandum opinion.


_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**